IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES D. BRYSON,<br><br>           Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>           Defendant. | Case No.: C-12-03254 JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 10); DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. No. 11)** |

      Plaintiff Charles D. Bryson seeks Social Security disability benefits arising from a gunshot wound to his right leg, which he suffered during a visit to Atlanta in 2003. He brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by Defendant Michael J. Astrue, the Commissioner of the Social Security Administration, denying him disability benefits. Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 10) and Defendant's Cross-Motion for Summary Judgment (Dkt. No. 11). Plaintiff alleges that the Administrative Law Judge did not properly apply the Medical Vocational Guidelines and accordingly erred in finding him not disabled. After carefully considering the pleadings filed by the parties, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**PROCEDURAL BACKGROUND**

Plaintiff Charles D. Bryson applied for disability insurance benefits under Title II of the Social Security Act ("Act") in February 2009, alleging disability beginning in September, 2007. *See* Administrative Record ("AR") 163-66. Plaintiff later amended the alleged onset date to June, 2005. *See* AR 17. The Social Security Administration ("SSA") denied his application initially, and also on reconsideration and reopening. *See* AR 106, 114. He then timely filed a request for a hearing before an administrative law judge ("ALJ"). *See* AR 106, 114, 120.

In March, 2011, Plaintiff, represented by Glen M. Clark, appeared for his hearing before ALJ Caroline H. Beers in Oakland, California. Plaintiff and vocational expert ("VE") Alan Nelson testified during the hearing. A month later, the ALJ issued a written decision denying Plaintiff's application, finding Plaintiff not disabled within the meaning of the Act and regulations. AR 17-27. After the Appeals Council denied review in May 2012, the ALJ's decision became the final decision of the Commissioner. *See* AR 1-6. Plaintiff timely filed an appeal with the Court, seeking judicial review pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) Both parties consented to proceed before a U.S. magistrate judge in accordance with 28 U.S.C. § 636(c). (Dkt. Nos. 4, 5.)

**FACTUAL BACKGROUND**

Plaintiff, who was 53 when he filed for disability, completed one year of college, served eight years in the Air Force, and can read, write, and do simple math. AR 67. From 1995 until December 2006, Plaintiff worked primarily as a cook and in the catering business and also had intermittent, part-time work painting houses. AR 21, 68, 70. After his amended onset date of June 20, 2005, Plaintiff worked as a cook for a friend's catering business, mostly around the holidays. AR 19, 68-69. Plaintiff reported that he eventually left his cooking jobs because he sometimes had trouble getting along with other people. AR 69-70. His earning record indicated that he earned $1,842.88 total in 2006. AR 19.

Plaintiff, who lives with his mother, wife, and eight-year-old grandson, reported the following daily activities to the ALJ: cooking for his family; getting his grandson ready and

taking him to school; caring for his mother who has Alzheimer's; completing such household chores as doing the laundry, vacuuming, sweeping and mopping; visiting with friends and watching television; playing pool; and attending church on occasion. *See* AR 21-22, 75-78.

Plaintiff's disability claim stems from a gunshot wound to his right leg, which he suffered while visiting his mother in Atlanta during Christmas, 2003. AR 22, 70, 284. He never underwent surgery for the gunshot wound and only began seeking treatment for leg pain four years later, in March, 2007. AR 294. Two months later, Plaintiff was in a car accident, after which he "developed onset of right shoulder pain, right elbow pain, right wrist pain and exacerbation of his right hip pain, right knee pain, and right distal lower extremity pain." *Id.* Plaintiff was subsequently diagnosed with peroneal neuropathy, which is damage to the peroneal nerve in his right leg. *See* AR 22, 291, 339.

At the hearing, the ALJ considered medical records from June 20, 2005, the alleged onset date, to March 31, 2009, the date last insured. AR 22. She also reviewed treatment records from outside the relevant time period "to understand the file and for medical history purpose [*sic*]."[1] *Id.*

### A. ALJ Hearing

The VE, who reviewed Plaintiff's file and was present for Plaintiff's testimony, testified to "the claimant's vocational history" and identified "the jobs along with the exertional and skill levels at which he performed those jobs and which they're generally performed in the national economy." AR 82. Based on that testimony and the evidence of record, the ALJ told the VE that she was concluding that Plaintiff could no longer do his past relevant work. AR 25, 83.

The ALJ posed several hypotheticals to the VE to determine whether there were jobs existing in significant numbers in the national economy for:

> an individual who is of the claimant's age, which would be 50, education and work history[,] who could do light work, meaning that he could lift and carry 10 pounds frequently, 20 pounds occasionally, could stand and walk

---

[1] Because the parties do not contest the evidence, the Court will not detail the medical history therein. *See* AR 21-25 (Review of medical history in ALJ ruling).

> for four hours, could sit for six hours, could crouch, kneel and squat on a rare to occasional basis, could occasionally climb stairs, crawl and stoop and would not be able to climb ladders.

AR 83. Specifically, the ALJ wanted to "determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured." *Id.*

The VE responded that the four-hour limitation in Plaintiff's ability to walk is equivalent to the need for a sit/stand option, which would reduce the available jobs by 25%. AR 26, 84. After that 25% erosion, the following unskilled, light occupations would be available: parking lot attendant (DOT[2] 915.473-010, 1991 WL 688713) with 2,947 jobs regionally and 98,895 nationally; cashier II (DOT 211.462-101, 1991 WL 671840) with 23,730 jobs regionally and 2,658,998 nationally; and ticket taker (DOT 344.667-010, 1991 WL 672863) with 2,490 jobs regionally and 80,025 nationally. AR 26, 84-85.[3] The DOT classified each of the three jobs as "light," which, according to the VE, meant "that standing would take place between 33% and 66% of the day. Standing is considered frequent in the position and it can be within that range." AR 87. Because these jobs can be booth-oriented, the VE opined that with the sit/stand option, a person could perform either job sitting down for six hours out of an eight-hour work day. *See* AR 86.

The 25% reduction in availability of all three jobs was a "fair" adjustment to account for the one in four positions not having the sit/stand option. AR 89. When cross-examining the VE, Plaintiff's attorney summarized what he understood the VE's testimony to mean: "And so, in that eroded section there those jobs are classified as light because some times [*sic*] there isn't the stool but if the stool's there then essentially the worker has the option to make the use of the stool, right?" AR 88. The VE confirmed his summary. *Id.*

---

[2] Dictionary for Occupational Titles.

[3] These figures reflect the 25% reduction in jobs that do not provide a sit/stand option. For example, the number of jobs available for parking lot attendants would be 131,860 nationally and 3,930 jobs locally. The figures provided above, however, reflected a 25% reduction to account for positions that require driving and relocating cars. *See* AR 84. It is unclear if the erosion for positions requiring driving and relocating was due to the walking involved in those tasks or Plaintiff's lack of a driver's license at the time of the hearing. *See* AR 67, 85.

The VE also addressed potential sedentary jobs which Plaintiff could perform: an addresser (DOT 209.587-020, 1991 WL 671797) with 1,480 jobs locally and 288,480 nationally; an assembler (DOT 734.687-018, 1991 WL 679950) with 2,930 jobs locally and 288,480 nationally; and a bench hand (DOT 715.684-026, 1991 WL 679344) with 2,270 jobs locally and 288,470 nationally. AR 85.

When asked if there were any other "light jobs" available within the constraints of the ALJ's hypothetical, the VE testified, "I think the light occupations would be an exhaustive list and not a set of examples. I think those are specific jobs that allow that sit/stand option in those settings so I think that would be more an exhaustive list. The sedentary positions, that can be representative." AR 89-90. The VE based his opinion regarding the use of the sit/stand option on his background "doing vocational evaluations with individuals in these occupations" at the Center for Career Evaluations and his "own professional experience with labor market surveys over the past 20 plus years." AR 89.

**B. ALJ's Findings**

Taking into consideration the testimony and evidence, the ALJ followed the SSA's five-step sequential evaluation process for determining disability. *See* C.F.R. 404.1520(a).

First, the ALJ concluded that the Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of June 20, 2005 through his date last insured of March 31, 2009." AR 19; *see* 20 C.F.R §§ 404.1520(a), 404.1571 *et seq.* Specifically, the ALJ found that Plaintiff's earnings of $1842.88 in 2006 did "not rise to the level of substantial gainful activity." AR 19.

Second, the ALJ determined that Plaintiff's right peroneal neuropathy constituted a "severe impairment" because it "significantly limits" his ability "to perform basic work activities." AR 18-19, *See* 20 C.F.R § 404.1520(c). However, she found Plaintiff's testimony about his degree of pain only partially credible. *See* AR 23. She reasoned that "[t]he credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of the record." AR 23. The ALJ instead concluded that the "positive

1 objective clinical and diagnostic findings . . . do not support more restrictive functional
2 limitations than those assessed herein." *Id.*

3       Third, the ALJ found that Plaintiff "did not have an impairment or combination of
4 impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt.
5 404, subpt. P, app. 1. AR 20; *see* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

6       Fourth, the ALJ determined that Plaintiff,

> has the residual functional capacity [RFC] to perform less than the full range of light exertional work as defined in 20 C.F.R. § 404.1567(b) and [Social Security Ruling] 83-10 specifically as follows: [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; [he] can stand and/or walk for four hours out of an eight-hour workday with regular breaks; [he] can sit for six hours out of an eight-hour workday with regular breaks; [he] can crouch, kneel, and squat on a rare to occasional basis; [he] can occasionally climb stairs, crawl, and stoop; and [he] cannot climb ladders.

14 AR 20. The ALJ compared Plaintiff's "residual functional capacity with the physical and
15 mental demands" of his past relevant work and concluded that he was not able "to perform
16 this past relevant work as actually or generally performed." AR 25; *see* 20 C.F.R. 404.1565.

17       At the fifth step, the ALJ consulted the Medical Vocational Guidelines ("grids") to
18 determine whether, based on Plaintiff's RFC, age, education, and work experience, there was
19 existing work in the national economy that he was capable of performing. *See* AR 26; 20
20 C.F.R. §§ 404.1520(g), 404.1569, 416.920. Plaintiff was 53 years old on the date last
21 insured and was thus considered "an individual closely approaching advanced age." AR 25;
22 *see* 20 C.F.R. § 404.1563. In addition, Plaintiff had at least a high school education and was
23 able to communicate in English. AR 26; *see* 20 C.F.R. § 404.1564.[4]

24       The ALJ concluded that if he had the RFC to perform "the full range of light work,"
25 the grids would direct a finding of "not disabled." AR 26; *see* 20 C.F.R. pt. 404, subpt. P,
26 app. 2, §§ 202.00(b), 202.14 (directing a finding of "not disabled" for claimant who is over

---

[4] The ALJ concluded that because use of the grids as a framework supported a finding that Plaintiff was "not disabled," the transferability of his job skills was not material to the determination of disability. AR 25; *see* SSR 82-41 and 20 C.F.R. pt. 404, subpt. P, app. 2.

the age of 50 at the onset of alleged disability, who has who has at least a high school education, who has no transferable skills, and who is functionally capable of performing "a wide or full range of light work").  Conversely, the grids would direct a "disabled" finding if Plaintiff's RFC limited him to sedentary work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 201.00(g), 201.14 (directing a finding of "disabled" for claimant who is over the age of 50 at the onset of disability, whose education does not provide for direct entry into skilled work, who has no transferable skills, and who is functionally limited to sedentary work).

The ALJ held, however, that Plaintiff's RFC fell between light work and sedentary work. AR 20.  Although he was capable of lifting and carrying objects of the weight and frequency involved in "light work," *see* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."), Plaintiff was limited to standing and/or walking for only four hours out of an eight-hour work day. Statement for Social Security Ruling ("SSR") 83-10, 1983 WL 31251 at *5-*6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").  *See* AR 20.  Having found Plaintiff to have an RFC to perform less than full range of light exertional work, the ALJ consulted VE testimony to determine the extent to which Plaintiff's limitations eroded the unskilled light occupation base. AR 26.  Based on that testimony and the record as a whole, the ALJ concluded that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  A finding of not-disabled is therefore appropriate."  AR 27 (internal quotations omitted).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error.  *See* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995); <u>Magallenes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. *See id.*; *Magallenes*, 881 F.2d at 750. "The ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984) (internal citations omitted); *see Batson v. Commissioner*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). "The court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

## LEGAL STANDARD

A claimant will be considered "disabled" under the SSA if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, he must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

If the ALJ concludes that a claimant is not capable of performing his past relevant work, she then asks whether the claimant can perform any other existing work in the national economy based on his RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920; *Stout v. Commissioner*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden shifts to the defendant to demonstrate the existence of a significant number of jobs in the national economy that could be performed by the claimant. *Tackett*, 180 F.3d at 1098. This burden is satisfied through testimony from a VE or reference to the grids, which present "a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* at 1101. The ALJ can utilize the grids only where "the grids accurately and completely describe the claimant's abilities and limitations." *Burkhart v. Bowen*, 856 F.2d

1335, 1340 (9th Cir. 1988) (internal citation omitted); *see Tackett* 180 F.3d at 1103 ("The grids should be applied only where a claimant's functional limitations fall into a standardized pattern accurately and completely described by the grids.") (internal quotations omitted)). "[T]he grids will be inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present." *Burkhart,* 856 F.2d at 1340.

    Where a claimant's RFC determination falls between two levels, i.e. "not disabled" at the higher exertional level and "disabled" at the lower exertional level,

> [t]he Secretary may base a finding of not disabled on the fact that a claimant can perform *some*, although not all, light work only if such a finding is supported by both medical evidence *and* the testimony of a vocational expert. To make such a finding, however, the Secretary is required to call a vocational expert and hear testimony as to whether the claimant can perform *enough* light jobs in the national economy to warrant a finding of not disabled.

*Desrosiers v. Sec. of Health and Human Serv.*, 846 F.2d 573, 579-80 (9th Cir. 1988) (internal citations and quotation marks omitted) (emphasis in original). The Program Policy Statement for SSR 83-12 of the Act provides further guidance for when, as here, "an exertional level falls between two rules which direct opposite conclusions." SSR 83-12, 1983 WL 31253, at *2. In such a situation, the following should be considered:

> (a) An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> (b) On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

*Id.*

    When consulting a VE, an ALJ poses hypothetical scenarios setting out all of the claimant's impairments for the VE's consideration. *See* SSR 83-12, 1983 WL 31253, at

9

1 *2; *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) ("An ALJ must
2 propose a hypothetical that is based on medical assumptions supported by substantial
3 evidence in the record that reflects each of the claimant's limitations."). The VE then

> translates these factual scenarios into realistic job market probabilities by testifying on the record to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled.

*Tackett*, 180 F.3d at 1101 (internal citations and formatting omitted). If a claimant "can make an adjustment to other work," he will be found not disabled. 20 C.F.R. § 404.1520(g)(2).

## DISCUSSION

The parties do not dispute the ALJ's finding that Plaintiff has an RFC to perform "less than the full range of light exertional work." AR 20. Nor do they challenge the ALJ's decision to consult a VE or the credentials of the VE himself. AR 26. Rather, their dispute centers on whether there was substantial evidence to support the ALJ's finding that a sufficient number of jobs exist which Plaintiff could perform. Plaintiff challenges the reliance on the DOT "light" classification of the jobs of parking attendant, cashier II, and ticket taker, and argues that as modified to accommodate the sit/stand option, the jobs would no longer fall under the "light work" classification. In other words, Plaintiff argues that the VE described jobs that were in fact sedentary which would therefore mandate a "disabled" finding. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 201.00(g), 201.14 (directing a finding of "disabled" for claimant who is over the age of 50 at the onset of disability, whose education does not provide for direct entry into skilled work, who has no transferable skills, and who is functionally limited to sedentary work). Thus, the Court must determine whether substantial evidence supports the ALJ's consideration of the parking attendant, cashier, and ticket taker jobs as "light" when they included a sit/stand option; that is, whether the VE's testimony

1  supports the ALJ's finding.  *See Durkee v. Astrue*, 2012 WL 3150587, at *5 (C.D. Cal. Aug.
2  2, 2012).  The Court concludes that it does.
3        The VE specifically testified that the jobs which a claimant with Plaintiff's RFC could
4  perform should be considered "light" even with a sit/stand option.  During the hearing,
5  Plaintiff's attorney asked the VE, "And so, in that eroded section there those jobs are
6  classified light because some times [*sic*] there isn't the stool but if the stool's there then
7  essentially the worker has the option to make the use of the stool, right?" to which the VE
8  responded, "Correct."  AR 88.  The VE explained that the DOT classification of jobs as
9  "light" means "that standing would take place between 33% and 66% of the day.  Standing is
10 considered frequent in the position and it can be within that range."  AR 87; *see also* SSR
11 83-10, 1983 WL 31251 at *6 ("Since frequent lifting or carrying requires being on one's feet
12 up to two-thirds of a workday, the full range of light work requires standing or walking, off
13 and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur
14 intermittently during the remaining time.").  The ALJ found that Plaintiff could stand up to
15 four hours—or half—of an eight-hour workday, well within the one-third to two-thirds range
16 of time required for light jobs.  AR 20.  The ALJ's finding that Plaintiff could perform
17 sufficiently available light work is supported by substantial evidence.
18       Plaintiff nonetheless insists that substantial evidence does not support the ALJ's
19 decision because the identified light jobs, with the sit/stand option, should have been
20 considered sedentary rather than light.  As support, Plaintiff relies on *Distasio v. Shalala*, 47
21 F3.d 348 (9th Cir. 1995).  In *Distasio,* however, the court held that

> [t]he testimony of the vocational expert belied the ALJ's finding that the combination of Distasio's exertional and non-exertional limitations did not limit him to sedentary work.  The vocational expert's testimony established that, at best, Distasio could perform jobs that fall within the sedentary category.  The Secretary has thus produced no evidence that Distasio is capable of any job other than sedentary work.

27 *Id.* at 350.  Thus, despite VE testimony that Distasio could only perform jobs that the VE
28 considered sedentary, the ALJ still concluded that he was "was capable of light work, but

1   with limitations" and thus not disabled. *Id.* at 349. The court overturned the ALJ's holding,
2   reasoning that the proper application of the grids as a framework should have resulted in a
3   finding of disabled. *Id.* (citing *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989)
4   (holding that once the testimony of a VE establishes the level of work a claimant is able to
5   perform, the ALJ is bound by the favorable results dictated by the grids.)). Here, in contrast,
6   the VE specifically testified that a claimant with Plaintiff's RFC could perform what the VE
7   considered light work. Thus, *Distasio* is inapplicable.

8        Plaintiff's reliance on *Durkee v. Astrue*, 2012 WL 3150587 (C.D. Cal. Aug. 2, 2012),
9   is likewise unavailing. In *Durkee* the plaintiff argued that the VE, as the VE in *Distasio*,
10  confirmed that plaintiff could only perform sedentary jobs. *Id.* at *4. The defendant, in
11  contrast, argued that the ALJ properly relied on VE testimony in finding that the plaintiff
12  could perform jobs that exist in the national economy. *Id.* The court disagreed with both
13  parties; instead, the court held that the VE's testimony was unclear as to whether the
14  identified jobs fall within the light or sedentary category. *Id.* at *5. Accordingly, the court
15  remanded the case to the SSA. *Id.* at *8. Here, in contrast, the VE's testimony is clear: the
16  VE testified that a claimant with Plaintiff's RFC could perform jobs that fall within the light
17  category with a sit-stand option, and that even with requiring that sit-stand option, sufficient
18  number of jobs existed in the national economy. AR 83-85.

19       Plaintiff responds that with the sit/stand option, the otherwise light jobs identified
20  by the VE become sedentary since "[n]one of the jobs require substantial standing. They
21  can all be performed sitting on a stool for six to seven hours a day."[5] (Dkt. No. 10 at 9.).
22  In other words, Plaintiff maintains that regardless of how the VE characterized the jobs,
23  the ALJ was wrong in finding that the jobs fell within the light category because with the
24  sit-stand option they were essentially sedentary jobs. *See* SSR 83-12(b), 1983 WL
25  31253, at *2 ("if the exertional capacity is significantly reduced in terms of the regulatory
26  definition, it could indicate little more than the occupational base for the lower rule and
27  could justify a finding of "Disabled."). The *Distasio* court held, however, that when a

claimant's RFC falls between two rules, a VE can still identify subcategories of jobs within the DOT that the claimant can perform. *Distasio*, 47 F.3d at 350. VEs can also refine their categorization of jobs a claimant could perform "to something along the lines of light-minus" or "sedentary-plus," effectively acknowledging gradations of each category. *Id.*; *see also Burkhart*, 856 F.2d at 1340 ("[T]he grids will be inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present."). Here, the VE essentially categorized the jobs as "light-minus." The VE testified that with the availability of a stool for these jobs, a person would stand between 33% to 66% of a work day, which, according to SSR 83-10, qualifies as light work. *See* AR 87. Moreover, the VE did not indicate that the tasks involved in these light jobs were changed or eroded. Rather, according to the VE, 75% of those positions could be performed sitting down for up to six hours of an eight-hour work day due to the availability of a sit/stand option. *See* AR 84-86. Drawing on his "own professional experience with labor market surveys over the past 20 plus years," the VE thus testified that there were light jobs that already provide the sit/stand option which Plaintiff could perform. AR 87-89. Such expert testimony constitutes substantial evidence in support of the ALJ's decision.

In *Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000), the plaintiff's RFC fell between the grid rules for light and sedentary. *Id.* at 870. Pursuant to SSR 83-12, the ALJ consulted a VE who testified that there was substantial gainful work in the economy for a person with Moore's profile. *Id.* The ALJ accordingly found Moore not disabled. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). Moore challenged the ruling, arguing that the ALJ "should have found that the upper category, light work, was so reduced that it was essentially equivalent to the lower category, sedentary work, which would have meant he was classified as disabled." *Id.* (internal quotations omitted). The court, however, upheld the ALJ's finding of "not disabled," reasoning that "even assuming that the evidence rationally supports Moore's argument, it also clearly supports the ALJ's decision to use a VE, and his subsequent ruling. Where evidence is susceptible of more than one rational interpretation, it is the ALJ's

13

1 conclusion which must be upheld."[6] *Id.* at 871 (internal citations and quotations omitted).
2 The court explained that "[t]he ALJ's finding that Moore was not disabled because
3 substantial gainful work exists in the national economy was supported by substantial
4 evidence." *Id.* at 871.

5 The ALJ's holding in this case is consistent with *Moore*. As in *Moore*, Plaintiff had
6 an RFC between light and sedentary. *See* AR 20. Both plaintiffs contested the ALJ's
7 findings of not-disabled on the ground that the category of light work had been eroded to a
8 degree that it was "essentially equivalent to the lower category, sedentary work." *Moore*,
9 216 F.3d at 870; (*see also* Dkt. No. 10 at 9). While the ALJ could perhaps have rationally
10 found that Plaintiff was limited to sedentary work, the VE's testimony also provided a
11 rational basis for finding that he could perform available light work. *See* AR 26-27.
12 Accordingly, as in *Moore*, the ALJ's finding of not disabled must be upheld. *See Batson v.*
13 *Commissioner*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is
14 subject to more than one rational interpretation, we must defer to the ALJ's conclusion.");
15 *see also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) ("[W]hen a claimant's
16 exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine
17 the claimant's occupational base by consulting a vocational expert regarding whether a
18 person with claimant's profile could perform substantial gainful work in the economy.");
19 *Desrosiers*, 846 F.2d at 579-80 (holding that to base a finding of not disabled for a claimant
20 who can perform less than the full range of light work, "the Secretary is required to call a
21 vocational expert and hear testimony as to whether the claimant can perform enough light
22 jobs in the national economy to warrant a finding of not disabled.").

---

[6] The VE had specifically identified jobs that Moore could perform. *Id.* Although the court's opinion did not indicate whether those occupations were light or sedentary, the court did acknowledge that Moore would be found disabled if only sedentary jobs were available. Because the ALJ cited the VE's testimony about available jobs when holding Moore not disabled, it appears that the jobs were accordingly considered light.

**CONCLUSION**

For the reasons set forth above, the Court concludes that substantial evidence supported the ALJ's holding and that the decision was not based on legal error. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallenes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment (Dkt. No. 10) and GRANTS Defendant's Cross-Motion for Summary Judgment. (Dkt. No. 11.)

**IT IS SO ORDERED.**

Dated: April 29, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE